# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALVIN MEAD** | **CIVIL ACTION** |
| **VERSUS** | **NO.  03-3058** |
| **WARDEN BURL CAIN** | **SECTION "C"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      Procedural History of the Captioned Case

On January 31, 2005, the undersigned issued a Report and Recommendation in which it was recommended that the federal habeas corpus petition filed by Alvin Mead be dismissed as untimely under the applicable law at the time.[2]  In response to Mead's objections, on June 13, 2005, the District Judge directed the undersigned to have Mead submit proof of what documents had been

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 9.

mailed to the state courts under cover of a certain certified mail receipt submitted with the objection, so that the Court could considered Mead's suggestion that the state mailbox rule should be applied to his state pleadings to provide either statutory or equitable tolling.[3]

Upon receipt of Mead's response,[4] the undersigned issued a Supplemental Report and Recommendation on July 19, 2005, resolving that Mead could not provide sufficient proof of what was in the envelope mailed to the Louisiana Supreme Court on October 27, 2000.[5] Mead had presented the Court with an unfiled copy of his later-filed writ application with a handwritten signature date of October 26, 2000, with no indication that the document had ever been to the state court. Further, the Louisiana Supreme Court's return-letter referred to the document as a letter, not a writ application. The Court therefore could not resolve exactly what was in the envelope exchange between Mead and the Louisiana Supreme Court.

The undersigned also recommended that Mead not be extended any equitable tolling for that time period in part because circuit precedence at the time did not require application of a mailbox rule for state pleadings and because the facts did not present the type of extraordinary circumstance that would warrant that type of relief. Mead again objected to the Supplemental Report and Recommendation.[6]

---

[3]Rec. Doc. No. 11.

[4]*See* Rec. Doc. Nos. 12, 13.

[5]Rec. Doc. No. 14.

[6]Rec. Doc. No. 15.

After considering Mead's objections, the District Judge issued an Order and Judgment on January 26, 2006, dismissing Mead's petition as time-barred.[7]  Mead appealed to the United States Fifth Circuit Court of Appeals ("Fifth Circuit").[8]

On August 28, 2007, the Fifth Circuit vacated and remanded the matter in light of its May 24, 2006, opinion in *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006), requiring the application of the mailbox rule to Louisiana state pleadings when addressing the timeliness of a federal habeas petition.[9]  *Mead v. Cain*, 243 F. App'x 874 (5th Cir. 2007).  On remand, the Court requested that the District Court resolve four questions:

> (1) whether the filing Mead tendered to the Louisiana Supreme Court on our about October 27, 2000, was indeed his writ application on direct review; (2) whether the Louisiana Supreme Court deemed that filing untimely; (3) whether Mead delivered his postconviction applications to prison authorities on the dates represented in the certificates of service at the trial court, appellate court, and supreme court level; and, (4) if necessary, whether Mead's constitutional claims have merit.  *See Causey*, 450 F.3d at 607.

*Id*. at 875.

The matter was referred to the undersigned Magistrate Judge for issuance of a report and recommendation in connection with the remand.

## II.  **Factual Background**

The petitioner, Alvin Mead ("Mead"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[10]  On February 26, 1998, Mead and a co-defendant, Natasha J. Jones, were charged by Bill of Information in Orleans Parish with possession of 28 grams or more, but less than

---

[7]Rec. Doc. Nos. 16, 17.

[8]Rec. Doc. No. 18.

[9]Rec. Doc. No. 28.

[10]Rec. Doc. No. 2.

200 grams of crack cocaine, or of a mixture containing a detectible amount of crack or cocaine or of its analogues.[11]

The record reflects that, on the night of October 5, 1997, Officer Travis McCabe, Sergeant Steven Gaudet and Officer Eric Hite were on uniformed patrol in a marked police unit in New Orleans, Louisiana.[12]  The officers turned left from First Street onto Dryades Street and ended up behind a vehicle driven by Jones with Mead as the passenger.  Jones began to drive recklessly and ran a stop sign.

Officer McCabe then activated the siren and lights to initiate a stop.  Jones accelerated. Officer McCabe noticed that the passenger, Mead, threw a large white object out of the window. The object hit a parked car and fell into the street.  At that time, Jones stopped her car at the curb.

When the officers exited their police unit, Officer McCabe recovered the object and determined it to be a white piece of paper flyer wrapped around a plastic bag containing a white powdery substance, later determined to be cocaine.  Mead soon became irrational and he had to be restrained.  Officer McCabe arrested both Mead and Jones for possession of cocaine.

On May 5, 1999, Mead and Jones were tried jointly before a jury.[13]  Jones was acquitted and Mead was found guilty as charged.[14]

---

[11]St. Rec. Suppl. Vol. 1 of 1, Bill of Information, 2/26/98.

[12]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal.  St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-2686, 9/27/00; *State v. Mead*, 771 So. 2d 329 (La. Ct. App. 2001) (table).

[13]St. Rec. Suppl. Vol. 1 of 1, Trial Minutes, 5/5/99; St. Rec. Vol. 1 of 2, Trial Transcript, 5/5/99.

[14]St. Rec. Vol. 1 of 2, Verdict of the Jury (Mead), 5/5/99; Verdict of the Jury (Jones), 5/5/99.

On the scheduled sentencing date, June 21, 1999, the State filed a multiple bill charging Mead as a third time felony offender.[15]  The Trial Court received evidence and adjudicated Mead to be a third time offender.[16]  After waiver of legal delays, the Trial Court sentenced Mead to life imprisonment without benefit of parole, probation or suspension of sentence.[17]  The Court also denied Mead's motion to reconsider the sentence.[18]

On appeal to the Louisiana Fourth Circuit Court of Appeal, Mead's counsel raised two assignments of error:[19] (1) insufficient evidence to support a conviction for possession of cocaine because of conflicting testimony from the police officers; and (2) the life sentence under the habitual offender statute was unconstitutionally excessive.  Mead acting *pro se* raised three additional assignments of error:[20] (1) the Trial Judge erred in granting the State's motion in limine to prevent the defense from referencing the mandatory minimum incarceration to which he was exposed; (2) the Trial Court erred in denying Mead's motion for mistrial after a prejudicial remark by a prospective juror during voir dire; and (3) the trial court erred in denying Mead's motion to recuse because of the Trial Judge's role in a charge conference during a prior drug prosecution against

---

[15]St. Rec. Suppl. Vol. 1 of 1, Multiple Bill, 6/21/99.

[16]St. Rec. Suppl. Vol. 1 of 1, Sentencing Minutes, 6/21/99; St. Rec. Vol. 1 of 2, Sentencing Transcript, 6/21/99.

[17]*Id.*

[18]*Id.*; St. Rec. Suppl. Vol. 1 of 1, Motion to Reconsider Sentence, 6/21/99.

[19]St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-2686, 9/27/00.

[20]*Id.*

Mead. On September 27, 2000, the Louisiana Fourth Circuit affirmed the conviction and sentencing after finding no merit to the grounds raised.[21]

Mead claims to have submitted a timely writ application to the Louisiana Supreme Court by mail on October 27, 2000, and that the application was erroneously returned to him by the Court's Central Staff. He resubmitted the application, which was filed on January 25, 2001, raising the five claims addressed on appeal.[22] The Supreme Court denied the application without reasons on September 21, 2001.[23]

On March 22, 2002, Mead submitted a Memorandum in Support of Post-Conviction Relief Application to Trial Court raising three grounds for relief:[24] (1) improper double enhancement in the habitual offender proceeding; (2) insufficient proof that the predicate offenses were constitutionally obtained; (3) ineffective assistance of counsel for failure to inform petitioner of a possible plea agreement, failure to challenge the sufficiency of the prior pleas as predicates, and failure to challenge the predicate pleas used in prior habitual proceeding. On March 27, 2002, the Trial Court denied the application on procedural grounds stating that the claims constituted errors in the multiple offender proceeding which were not cognizable on post-conviction review, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So. 2d 1172 (La. 1996).[25]

---

[21]*Id.*

[22]St. Rec. Vol. 2 of 2, Letter to Supreme Court, 1/3/01; Letter to Supreme Court, undated; La. S. Ct. Writ Application, 01-KH-0261, 1/25/01.

[23]*State ex rel. Mead v. State*, 797 So. 2d 72 (La. 2001); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2001-KH-0261.

[24]St. Rec. Suppl. Vol. 1 of 2, Memorandum in Support of Post-Conviction Relief Application, signed 3/22/02. The record copy does not bear a file stamp date. The signature date is presumed to be the earliest date upon which he could have presented the pleading to prison officials for mailing.

[25]St. Rec. Suppl. Vol. 1 of 1, Judgment, 3/27/02. La. Code Crim. P. art. 930.3 sets forth the grounds on which post-conviction relief can be granted. In *State ex rel. Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were

On April 23, 2002, Mead submitted a writ application to the Louisiana Fourth Circuit , which was filed in the Court on May 1, 2002, raising the same three grounds for relief.[26] The Louisiana Fourth Circuit denied Mead's application on June 17, 2002, finding no error in the trial court's ruling.[27]

Mead also submitted a writ application to the Louisiana Supreme Court on July 17, 2002, seeking review of the same three post-conviction claims and challenging the lower court's reliance on *State ex rel. Melinie*, to bar his ineffective assistance of counsel claims.[28] The Court denied the application without reasons on August 29, 2003.[29]

## III.    Federal Petition

On November 20, 2003, the Clerk of this Court filed Mead's petition for federal habeas corpus relief in which he raised six grounds for relief:[30] (1) the evidence was insufficient to support a conviction for possession of cocaine; (2) the life sentence under the habitual offender statute was unconstitutionally excessive; (3) ineffective assistance of counsel for failure to inform petitioner of a possible plea agreement until the morning of trial, failure to discuss the ramifications of the

---

not proper grounds for post-conviction relief. 665 So. 2d 1172. In *State ex rel. Brown v. State*, 870 So.2d 976 (La. 2004), the Louisiana Supreme Court extended the *Melinie* holding to claims arising from multiple offender proceedings which should have been raised on direct appeal.

[26]St. Rec. Suppl. Vol. 1 of 1, 4th Cir. Writ Application, 2002-K-0849, 5/1/02 (signed 4/23/02, postmarked April 24, 2002). The copy of the application in the record provided by the State does not bear a file stamp. The filing date was obtained from the Office of the Clerk of Court for the Louisiana Fourth Circuit. Mead provided the Court with the postal receipt. Rec. Doc. No. 13.

[27]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2002-K-0849, 6/17/02.

[28]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 02-KH-2063, 7/24/02 (signed and postmarked 7/17/02); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Letter, 7/24/02 (postmarked 7/17/02).

[29]*State ex rel. Mead v. State*, 852 So. 2d 1009 (La. 2003); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2002-KH-2063, 8/29/03.

[30]Rec. Doc. No. 2.

possible plea, and failure to make a recommendation regarding acceptance of the plea; (4) ineffective assistance of counsel for failure to challenge the predicate pleas and to require the State to prove that the prior pleas were knowingly and intelligently made; (5) the trial court erred in denying the defendant's motion for mistrial after a prejudicial remark by a prospective juror during voir dire; and (6) the trial court erred in denying the defendant's motion to recuse because of the trial judge's role in a charge conference during a prior drug prosecution against the defendant.

In its response to the petition, the State argued that Mead's claims of ineffective assistance of counsel were procedurally barred from review and were otherwise without merit. The State also argued that the remaining claims were without merit.

## IV. **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[31] applies to this petition, which is deemed filed in this court under the federal mailbox rule on October 6, 2003.[32] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was

---

[31]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro* se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Clerk of Court filed Mead's petition on November 20, 2003, when he paid the filing fee. Mead did not sign the petition nor did he date his signature on the memorandum in support. However, he did date his signature on the pauper application, which was submitted simultaneously with the petition, on October 6, 2003. Affording him every benefit, the Court will consider this to be the earliest date on which he could have delivered the package of documents to prison officials for mailing to the Court. The fact that he paid the filing fee at a later date does not alter the application of the mailbox rule to this pro se petition. *Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

A review of the records before the Court reflects that Mead has exhausted available state court remedies and the State concedes this. The State has also raised procedural default in connection with two of Mead's claims and the timeliness of the petition remains unresolved.

## V.  Timeliness of the Petition

### A.  Standards of Review

The AEDPA requires a petitioner to bring his § 2254 petition within one year of the date his conviction became final.[33] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Under the plain language of § 2244, Mead would have one year from the finality of his conviction to file a timely

---

[33]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

federal application for habeas corpus relief or face a time bar.[34]  The statute also provides, however, for certain tolling benefits.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2) (2006).  In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  The Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  *Causey*, 450 F.3d at 604-05.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review is unavailable under the particular state's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.

---

[34]Although November 1 was a Monday, that date is a recognized state holiday in Louisiana.  La. Rev. Stat. Ann. § 1:55(A) (2008).

*Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

**B.    Discussion**

The timeliness of Mead's petition requires first that the Court resolve the finality of his conviction. To do so, the Court must consider the questions presented by the Fifth Circuit on remand. In connection with this issue, the Fifth Circuit requests that the Court determine whether Mead's post-appeal writ application was in fact tendered to the Louisiana Supreme Court on October 27, 2000. The timely filing of a writ application on that date would effect the determination of finality. The Fifth Circuit also requests a determination on whether the Louisiana Supreme Court deemed the writ application eventually filed on January 25, 2001, to have been timely filed.

As noted in the prior Supplemental Report and Recommendation (Rec. Doc. No. 14), Mead has not presented any concrete proof to this Court that the document he mailed to the Louisiana Supreme Court on October 27, 2000, was in fact a writ application. The letter sent to Mead by the Louisiana Supreme Court Central Staff on December 20, 2000, indicates that they were responding to a "letter" from him. Mead contends that it was not a letter; rather it was a timely writ application following his appeal. In his prior pleadings before this Court, Mead conceded that he can not

provide any better proof of what he mailed in that envelope because the Louisiana Supreme Court did not mark or file-stamp the returned documents.

The state court record contains two letters from Mead to the Louisiana Supreme Court, dated January 3, 2001, and July 29, 2001, in which he claims that he attempted to file his writ application in October 2001 and requests that his writ application be considered timely.[35] A similar third letter is in the record as an attachment to another pleading and is not dated.[36]

In answer to the Fifth Circuit's first question, as reported in 2006, the record contains nothing to firmly resolve that Mead actually mailed a writ application to the Louisiana Supreme Court on October 27, 2000. *See Derouselle v. Cain*, No. 05-1380, 2006 WL 1985446 (E.D. La. 2006) (Order adopting Report and Recommendation) (certified mail receipt was not proof of envelope's content). The only determination that can be made from the record is that Mead is persistent in his position that he mailed a timely application for post-conviction relief to the Louisiana Supreme Court on October 27, 2000.

Nevertheless, affording Mead every benefit of the doubt, and assuming he mailed a writ application to the Louisiana Supreme Court on October 27, 2000, and that it was erroneously returned to him by Central Staff, this would not change the fact that <u>nothing</u> was actually filed at that time. His documents were returned to him unfiled. The impact of this "erroneous" return by the Central Staff also will be further addressed in the equitable tolling discussion later in this opinion. Thus, Mead had no properly filed or pending pleading in or considered by the Louisiana Supreme

---

[35]St. Rec. Vol. 2 of 2, Letter to Supreme Court, 1/3/01; Letter to Supreme Court, 7/29/01.

[36]St. Rec. Vol. 2 of 2, Letter to Supreme Court, undated.

Court at that time because the documents were <u>returned</u> to him. Having nothing filed, he did not successfully continue the direct line of review and his conviction became final.

As for the timeliness of the January 25, 2001, writ application to the Louisiana Supreme Court, *res ipsa loquitur*. Mead concedes that he did not mail or file or submit the writ application which was actually filed on January 25, 2001, until after December 20, 2000, when he learned that his October 27, 2000, mailing was rejected by Central Staff. This was without question more than thirty days after the Louisiana Fourth Circuit affirmed his conviction and sentence on September 27, 2000. On its face, it was not timely presented in accord with La. S. Ct. Rule X§5.

The Fifth Circuit has long-resolved that, because there are no exceptions to La. S. Ct. Rule X§5, when an application is untimely presented to the Louisiana Supreme Court, the application is not "properly filed."[37] *Butler v. Cain*, 533 F.3d 314, 319 (5th Cir. 2008); *Williams*, 217 F.3d at 311. Therefore, a state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review. *Butler*, 533 F.3d at 317 (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process). This means that Mead's conviction became final on October 27, 2000, when he failed to successfully file or submit anything in the Louisiana Supreme Court.

This brings the discussion to the Fifth Circuit's second question, whether the Louisiana Supreme Court considered the January 25, 2001, writ application to be untimely. The Louisiana Supreme Court denied Mead's 2001 writ application without reasons stating only "denied." The

---

[37]La. S. Ct. Rule X§5 provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment.

Fifth Circuit has addressed the meaning of this oft used one-word denial by the Louisiana Supreme Court in connection with an untimely filed writ application. *Butler*, 533 F.3d at 319 n.2.

In *Butler*, the Fifth Circuit recognized that the *Causey*[38] court, while conceding no exception to timeliness under La. S. Ct. Rule X§5, was concerned with whether the "untimely" writ application was addressed by the Louisiana Supreme Court on the merits or dismissed as untimely. The Fifth Circuit noted in *Butler* that this query differed from the Court's earlier *Williams* opinion, *supra*, which stopped its tolling inquiry at the determination that the untimely writ was "improperly filed." *Id*. The Fifth Circuit resolved the conflict in *Butler* by holding that the Louisiana Supreme Court's one-word denial of an untimely filed writ application was a dismissal of the writ application as untimely. In so doing, the Fifth Circuit noted that "the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits." *Butler*, 533 F.3d at 319. The *Butler* court has answered the question. The untimely filed writ was denied as untimely.

At this juncture, the Court is compelled to reconsider whether Mead is entitled to some equitable tolling for the lapse of time between October 27, 2000 and the filing of the January 25, 2001, writ application in the Louisiana Supreme Court. While this will not change the finality of Mead's conviction, it could afford Mead interuption of the running of the AEDPA filing period.

The United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806,

---

[38]*Causey*, 450 F.3d at 604-05.

810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

For purposes of this discussion, the Court will assume that the October 27, 2000, letter to the Louisiana Supreme Court included a writ application seeking review of the appellate court's opinion. As noted above, Mead alleges that he attempted to timely file the writ application and was denied that opportunity as the result of an error made by the Central Staff in returning the documents due to their mistaken belief that his appeal was still pending. In other words, Mead alleges that the state court itself created the delay which caused his writ application to be untimely filed.

Specifically, Mead refers to the Central Staff's letter where it states that his papers were returned because his direct appeal was still pending.[39] Clearly, Mead's direct appeal was not pending when he mailed his letter to the Louisiana Supreme Court on October 27, 2000, nor was it pending on December 20, 2000, when the Central Staff's returned his documents to him. This was clear error on the part of the court's personnel.

In addition, the Central Staff waited almost two months to notify Mead that his documents were being rejected. Immediately upon receipt of this letter, however, Mead began efforts to resubmit the pleadings for filing in the Louisiana Supreme Court. In fact the record demonstrates that, other than this one period of time, Mead has diligently pursued both his state and federal rights with timely filings.

"A prisoner must do all that he reasonably can 'to ensure that documents are received by the clerk of court in a timely manner.'" *Schillereff v. Quarterman*, 304 F. App'x 310, 312 (5th Cir.

---

[39]Rec. Doc. No. 13, Exh. B.

2008) (quoting *Thompson v. Rasberry*, 993 F.2d 513, 515 (5th Cir. 1993)). The record demonstrates that Mead met this burden. In spite of this, through no fault of his own, his documents were rejected on the false premise that his appeal was pending. This appears to constitute an unintentional interference by state court personnel with his ability to file his pleadings.

Under these circumstances, Mead is entitled to equitable tolling of the time period from October 27, 2000, to the filing of the January 25, 2001, writ application. *But see*, *Howland v. Quarterman*, 507 F.3d 840 (5th Cir. 2007) (equitable tolling not warranted where post-conviction application was timely given to prison authorities for mailing but never received by state court because state court did not mislead the prisoner in any way and state officials did not interfere with his right to file); and *Hayes v. Wilson*, 268 F. App'x 344 (5th Cir. 2008) (state court's misfiling of appellate and state post-conviction pleadings did not warrant equitable tolling where petitioner was not actively misled about his rights). This would also include the granting of tolling for the pendency of the January 25, 2001, writ application, which was untimely filed as a result of the interference with the filing of the original writ application on October 27, 2000. This will provide Mead with tolling from October 27, 2000, when he attempted to mail the writ application to the Louisiana Supreme Court, through September 21, 2001, when the Louisiana Supreme Court denied the January 25, 2001, writ application.

Applying this period of equitable tolling to the foregoing procedural history, Mead's federal petition is considered timely filed. He did not allow more than one year to pass before filing the instant federal petition. Applying the mailbox rule addressed in *Causey*, which was issued after the District Court's prior review of this case, Mead's remaining state court pleadings were timely submitted to the state courts and provided him with statutory tolling of the AEDPA filing period.

Thus, in answer to the Fifth Circuit's third question, the signature dates on Mead's subsequent state trial, state appellate, and Louisiana Supreme Court pleadings coincide with the dates presented on the certified mail receipts and there is no reason to question that Mead's subsequent state court filings were timely presented to prison authorities for mailing to those courts.

As a result, the Court will move to the fourth question posed by the Fifth Circuit, whether Mead's constitutional claims have merit. As a threshold matter before reaching the merits of Mead's claims, the Court must also consider whether any of his claims are in procedural default. *Nobles*, 127 F.3d at 419-20. As raised by the State, Mead's ineffective assistance of counsel claims are procedurally barred from review for the following reasons and his remaining claims are without merit.

## VI.    Procedural Default (Claim Nos. 3 and 4)

Mead alleges in two of his claims that counsel was ineffective for failure to notify him of a plea offer until the morning of trial, failure to discuss the ramifications of the possible plea, failure to make a recommendation regarding acceptance of the plea, failure to challenge the predicate pleas, and failure to require the State to prove that the prior pleas were knowingly and intelligently made.

He raised these claims for the first time in his state application for post-conviction relief. The Trial Court determined that these claims, among others, arose from the multiple bill proceedings and were not appropriate for post-conviction review. The court denied the application citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*. The Louisiana Fourth Circuit and the Louisiana Supreme Court denied his subsequent writ applications without reasons. The Trial Court's procedural denial was the last reasoned decisions issued by any state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based

on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

A.    **Independent State Grounds**

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338. In this case, the Trial Court offered the last reasoned decision refusing to consider Mead's ineffective assistance of counsel claims. The basis therefor was the state procedural requirements found in La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, which prohibit post-conviction review of claims of excessive sentence or errors in sentencing. The Louisiana Supreme Court extended this prohibition to matters arising from multiple offender proceedings and sentences. *State ex rel. Brown v. State*, 870 So.2d

976 (La. 2004). The basis for the Trial Court's dismissal was therefore independent of federal law and relied strictly on state procedural requirements. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, No. 98-0584, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (Art. 930.4); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B.  Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*; *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997) (in order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule).

A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 4:00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, the bar must stand.

In this case, the state courts relied on La. Code Crim. P. art. 930.3 and related case law to bar review of Mead's ineffective assistance of counsel claims. The federal courts have repeatedly held that La. Code Crim. P. art. 930.3 is an adequate state law ground for dismissal which bars review of similar claims by the federal courts in a habeas corpus proceeding. *See*, *e.g.*, *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016 (5th Cir. Sept. 28, 2000) (Table, Text in Westlaw); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086 (E.D. La. June 30, 2005) (Berrigan, C.J.) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (same); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same).

The Court reiterates that it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to

ineffective assistance of counsel claim). In this case, the Court finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 is adequate to bar review of the merits of Mead's ineffective assistance of counsel claims. *Lott v. Miller*, No. 05-6046, 2008 WL 4889650, at *1 n.1 (E.D. La. Nov. 3, 2008) (Africk, J.) (applying Art. 930.3 to an ineffective assistance of counsel claim).

Mead will be excepted from the procedural bars to federal review of his claims only if he can show cause for his defaults and prejudice attributed thereto. Alternatively, he could demonstrate that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). These exceptions to the imposition of a bar will be addressed below.

### C.    Cause and Prejudice

To establish a cause for his procedural default, Mead must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Mead has not demonstrated in his pleadings the existence of any objective factor <u>external</u> to the defense that impeded his ability to properly raise these claims. Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.     Fundamental Miscarriage of Justice

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Mead has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Mead has not established any exception to the imposition of the procedural bar to review of his claims. His ineffective assistance of counsel claims (Claims 3 and 4), therefore, must be dismissed with prejudice as procedurally barred.

## VII.    Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VIII. <u>Sufficiency of the Evidence (Claim No. 1)</u>

Mead alleges that the evidence was insufficient to support a conviction for possession of cocaine. He alleges that there was conflicting testimony at trial which gave rise to a reasonable doubt. He points to certain testimony showing a 10 gram weight difference in the amount of cocaine seized and that tested in the laboratory and the conflict in the officer's testimony as to whether the

driver or the passenger threw the cocaine out of the car. He argues that these discrepancies were sufficient for a rational juror to find reasonable doubt. The State alleges that the Louisiana Fourth Circuit's opinion on this issue was not an unreasonable application of federal law.

Mead's counsel first raised this claim on direct appeal to the Louisiana Fourth Circuit. The Court denied relief and resolved that the evidence, including circumstantial evidence, was sufficient under the standards in *Jackson v. Virginia*, 433 U.S. 307 (1979), and related state case law.

The Louisiana Fourth Circuit resolved that the discrepancies in the officers' testimony were not relevant to the elements of the crime charged and resolution of any conflict was left to the jury. In addition, the Court resolved that the differences in the reported weights of the cocaine were adequately clarified by the testimony tending to show that the final weighing was for the crime laboratory. This was the last reasoned decision on the issue since the Louisiana Supreme Court denied the subsequent writ application without reasons. *See Ylst*, 501 U.S. at 802.

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, which was relied upon by the state appellate court.[40] Under this standard, a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the trier of fact, and it follows that a conviction can not stand where no rational trier of fact could have

---

[40]As noted by Mead, Louisiana law allows a crime to be proven by circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438 (2005). However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, but must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). As for the circumstantial evidence rule, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 208 (La. Ct. App. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. Ct. App. 1993); *accord Williams*, 693 So. 2d at 208. The appropriate standard for this Court remains *Jackson*.

found guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 316-17. However, the trier's findings on an issue of fact will be upset only where necessary to preserve the "fundamental protection of due process of law." *Jackson*, 443 U.S. at 319. Where the prosecution has failed to prove beyond a reasonable doubt any element of a crime, a resulting conviction is "not consistent with the demands of the Federal Due Process Clause." *Fiore v. White*, 531 U.S. 225, 229 (2001) (*per curiam*). Thus, the *Jackson* standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

Mead was charged and convicted of possession of cocaine in violation of La. Rev. Stat. Ann. § 40:967(F)(1)(a), which provides:

> Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.

La. Rev. Stat. Ann. § 40:967(F)(1)(a) (2008).

Under Louisiana law, to find a person guilty of possession of cocaine in an amount in excess of 28 grams, the state must prove that (1) the defendant knowingly or intentionally possessed

cocaine and (2) that the amount of cocaine possessed was between 28 and 200 grams.  *State v. Sims*, No. 44,284-KA, 2009 WL 1782810, at *2 (La. Ct. App. June 24, 2009) (citing La. Rev. Stat. Ann. § 40:967 C & F(1)(a) (2008); *State v. Montgomery*, 974 So. 2d 110 (La. Ct. App. 2008); *State v. Lewis*, 965 So. 2d 971 (La. Ct. App. 2007)).

With respect to the first factor, the elements of knowledge and intent are states of mind that need not be proven as facts, but may be inferred from the circumstances.  *State v. Reyes*, 726 So. 2d 84, 88 (La. Ct. App. 1998); *State v. Davies*, 350 So. 2d 586, 588 (La. 1977).  The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance.  *Williams*, 802 So.2d at 914.

Under Louisiana law, a person not in physical possession of a drug may have constructive possession when the drug is under that person's dominion or control.  *State v. Reyes*, 726 So.2d at 88.  Factors considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession may include: 1) the defendant's knowledge that illegal drugs were in the area; 2) his relations with the person found to be in actual possession; 3) the defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) the existence of paraphernalia; and, 6) evidence that the area was frequented by drug users.  *State v. Williams*, 735 So. 2d 62, 69 (La. Ct. App. 1999) (citing *State v. Appacrombie*, 616 So. 2d 285, 288 (La. Ct. App. 1993)).

In the instant case, Mead challenges the veracity of the jury's verdict to the extent it was based on the testimony of Officer Travis McCabe and Officer Steven Gaudet.  Specifically, he alleges that Officer McCabe testified in a pretrial hearing and at trial on direct examination that he saw defendant's right arm extend out of the right side window of the car and throw a white object

into the street. Mead claims that this conflicts with his written report in which he indicated that he saw defendant stick out his left arm. Mead concedes that McCabe also testified that he was in error when he wrote that in his report.

He also complains that McCabe testified that he wrote his report at 12:59 p.m., when the report was actually written at 11:59 p.m. McCabe attributed this to his own error. McCabe also had conflicting weights in the report regarding the amount of cocaine seized.

Mead also alleges that Officer Gaudet testified at trial that the white object was thrown from the car on the driver's side. On cross-examination, Officer Gaudet retracted this statement and indicated that the object was thrown from the passenger side. Mead argues that all of this "confusing and conflicting" testimony could not have led to a guilty verdict because reasonable doubt existed.

The fact that a conviction is based on the credibility of witnesses is not sufficient to supplant the jury's determination of guilt. *Green v. Johnson*, 160 F.3d 1029, 1047 (5th Cir. 1998). Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses. *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (under *Jackson* resolving credibility issues is generally beyond the scope of appellate review); *United States v. Goff*, 155 F. App'x 773 (5th Cir. 2005) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)). Instead, the narrow standard of review under *Jackson* "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "The trier of fact has broad discretion to 'resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Green*, 160 F.3d at 1047 (quoting *Jackson*, 443 U.S. at 319).

In this case, Officer McCabe testified that he and his partner, Officer Gaudet, began to follow Jones's car when her driving became erratic and peaked their suspicions.[41]  Officer McCabe also testified that after they attempted to stop the car, he saw an arm extend out of the right side window and a large white object was thrown out, towards a parked truck.[42]

When the vehicle finally stopped about 25 yards away, the officers, including a third officer named Officer Hite, determined that the car was being driven by Jones, with Mead in the passenger seat and a two or three year old child named Alvin Jones in the back seat.[43]  Officer McCabe retrieved the object and found it to be a piece of white flyer paper crumpled around a plastic bag containing a large amount of a white powder substance which he believed to be cocaine.[44]  Officer McCabe also testified that Mead became belligerent and agitated when he was placed under arrest.[45]

The officer also testified that he prepared the arrest report the next day, which was the custom at the time.[46]  In the report, he indicated that he wrote that the passenger threw the white paper out with his left arm.[47]  He testified that this was error on his part and that he was positive that the arm used was the right arm from the passenger window.[48]

---

[41]St. Rec. Vol. 1 of 2, Trial Transcript, pp. 37-40, 5/5/99.

[42]*Id*. at 40.

[43]*Id.* at 41.

[44]*Id*. at 41-42

[45]*Id*. at 43.

[46]*Id*. at 45.

[47]*Id*. at 48.

[48]*Id*.

As for the weight of the cocaine, the officer testified that they use a small scale in the booking room to get an approximate weight.[49]  He stated that the evidence room uses a more accurate certified scale.[50]  He further testified that the report is written in parts at different times which would account for differing weights being referenced in it.[51]  He explained that on the first page of his report, the weight was noted as 62.6 grams.[52]  He stated that this approximate weight is there so the magistrate judge will know the charges during the bond hearing.[53]  On the sixth page of his report, prepared later, the weight is noted as 72.5 grams.[54]  He confirmed that both amounts were over 28 grams of cocaine, which was the base level of the charge placed against Mead.[55]  He also testified that the official weight is determined by the evidence laboratory.[56]

Officer McCabe also testified that he erred in indicating on the report that the cocaine was given to the evidence room at 12:59 p.m. on October 5, because he did so at 11:59 p.m. on October 5, the night of the arrest.

The jury also heard the testimony of Officer Gaudet about the events leading to Mead's and Jones's arrests.  Officer Gaudet testified on direct that, during their pursuit of Jones's car, the driver

---

[49]*Id*. at 53.

[50]*Id*.

[51]*Id*. at 54.

[52]*Id*. at 74.

[53]*Id*.

[54]*Id*.

[55]*Id*.

[56]*Id*.

threw a piece of trash, a balled up piece of paper, out of the window.[57]  Later, he testified that "the

passenger, Mr. Mead, threw it out of the window with his right hand."[58]  He also clarified later in

his testimony that if he said that "the driver" threw the paper out, it was a mistake on his part.[59]  He

also confirmed that the passenger threw the object out with his right hand.[60]

The testimony as a whole was sufficient for a reasonable jury to resolve any of the

conflicting statements or notations made by the police officers.  The officers presented explanations

for the inadvertent errors and clarified their recollections.  The jury's decision to believe those

witnesses was well within their discretion.  The jury apparently resolved that the officers were

testifying truthfully and weighed this into their verdict.

The evidence established that the police officers witnessed Mead throw the wad of paper,

containing 28 to 200 grams of cocaine, out of the passenger window of Jones's car.  The fact that

Mead had the cocaine in his control in order to throw it out of the window was sufficient to establish

possession.  This evidence, in a light most favorable to the prosecution, establishes the elements of

the crime of possession of cocaine.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable

application of, *Jackson*.  Mead is not entitled to relief on this claim.

## IX.    Excessive Sentence (Claim No. 2)

Mead argues that his life sentence as a third felony offender is excessive, cruel and unusual,

and grossly disproportionate to the crime he committed, all in violation of the due process clause

---

[57]*Id*. at 79-80.

[58]*Id*. at 83.

[59]*Id*.

[60]*Id*. at 84-85.

and equal protection standards.  He also argues that the impropriety of the sentence is evidenced by the fact that the habitual offender sentence was imposed upon him without regard for his drug use and young age.[61]

The State argues that the state appellate court applied the correct law and its decision was in compliance with Supreme Court precedent.

Mead challenged the excessiveness of his sentence on direct appeal to the Louisiana Fourth Circuit.  The court, which offered the last reasoned decision, held that Mead had not shown that the mandatory life sentence imposed upon him as a third offender was excessive nor did he rebut the presumption that the sentence was constitutional.  After reviewing his criminal history, the Court resolved that he was a repeat offender with escalating drug crimes involvement and who was appropriately punished by imposition of the life sentence.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other

---

[61]He also contends that the Louisiana legislature recognized the inappropriateness of the life sentence when it amended Louisiana's Habitual Offender statute, La. Rev. Stat. Ann. § 15:529.1, to remove the possibility of a life sentence even for the most hardened criminal.  The Court rejects this argument since the Louisiana's Habitual Offender statute contains several opportunities for a multiple offender such as Mead to face a life sentence.

criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F. 2d at 316.

In denying relief to Mead, the Louisiana courts made this same comparison in considering his sentence on appeal. At the time of his crime and conviction, La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) mandated that a life term be imposed on a third felony offender like Mead:

> A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows: . . .
> (b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then: . . .
> (ii) <u>If the third felony or either of the two prior felonies is a felony defined</u> as a crime of violence under R.S. 14:2(13) or <u>as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.</u>

La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) (2005) (emphasis added).

Mead concedes that all three of his convictions, while not necessarily violent, were for felonies in violation of Louisiana's Controlled Dangerous Substances Law. The record reflects that Mead's prior convictions were for possession of cocaine and, at the time of his prosecution on the

underlying charge, he also was facing charges for distribution of heroin.[62] As such, under Louisiana

law, Mead's third drug offense was more than a sufficient basis for imposition of the life sentence.

Furthermore, the United States Supreme Court has stated that "'[t]he Eighth Amendment

does not require strict proportionality between crime and sentence. Rather, it forbids only extreme

sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 528 U.S. 11, 23

(2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in

judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross

disproportionality. *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005). As noted above, that

disproportionality is judged by whether similar sentences have been imposed for the same offense.

*Smallwood*, 73 F.3d at 1346-47.

At the time of Mead's crime and conviction, Louisiana courts consistently imposed the

mandatory life sentence, without benefit of parole, probation, or suspension of sentence, to third

offenders similarly situated. *See*, *e.g.*, *State v. Wolfe*, 761 So. 2d 596 (La. Ct. App. 2000) (third

offense was possession with intent to distribute cocaine with two prior cocaine possession

convictions and sentenced to life as third offender); *State v. Thompson*, 752 So. 2d 293 (La. Ct.

App. 2000) (third offense was possession with intent to distribute cocaine and sentenced to life as

third offender); *State v. Davis*, 745 So. 2d 136 (La. Ct. App. 1999) (remanded for resentencing to

mandatory life as third offender where defendant was convicted of simple burglary and had two

prior drug convictions); *State v. Hollins*, 742 So. 2d 671 (La. Ct. App. 1999) (third offense was

possession with intent to distribute cocaine and sentenced to life as third offender); *State v. Bell*, 709

So. 2d 921 (La. Ct. App. 1998) (third offense was possession with intent to distribute cocaine and

---

[62]St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-2686, p. 7, 9/27/00.

sentenced to life as third offender); *State v. Hollins*, 704 So. 2d 307 (La. Ct. App. 1997) (third

offense was possession with intent to distribute cocaine and sentenced to life as third offender); *State*

*v. Issac*, 702 So. 2d 320 (La. Ct. App. 1997) (third offense was possession with intent to distribute

cocaine and sentenced to life as third offender).

To warrant a downward departure as an exception to the life sentence mandate, Louisiana

courts require that a defendant present clear and convincing evidence that the life sentence does not

meet the goals of the intended punishment, to prevent recidivism for example, and amounts to a

purposeless and needless imposition of pain and suffering. *State v. Johnson*, 709 So. 2d 672, 675

(La. 1998). Mead did not and has not here met this burden.

As discussed above, Mead had two prior drug convictions before he committed the crime

forming the basis of this petition. He admittedly was involved in repeated drug activity. His alleged

prior drug use, without more, is not sufficient to warrant a downward departure under Louisiana law.

*State v. Williams*, 788 So. 2d 515 (La. Ct. App. 2001) (third offender); *State v. Bazile*, 762 So. 2d

106 (La. Ct. App. 2000) (fourth offender). Nor is it appropriate here under federal law.

In *Robinson v. California*, 370 U.S. 660 (1962), the United States Supreme Court held that

the California statute which made addiction to narcotic drugs a criminal offense, punishable as such,

violated the Eighth and Fourteenth Amendments to the United States Constitution. The *Robinson*

Court made clear that while it is unconstitutional to impose criminal sanctions on a person simply

because he is addicted to drugs, it is <u>not</u> unconstitutional to punish overt acts which may originate

from drug addiction. *Robinson*, 370 U.S. at 665. Thus, Mead has no basis under federal law to

avoid imposition of the habitual offender laws based on his unsupported claim that he was a drug

user.  *See Bailey v. U.S.*, 386 F.2d 1 (5th Cir. 1967) (finding that *Robinson* did not prohibit punishment for crime even if motivated by drug use).

Nothing Mead has argued distinguishes his situation as an exception to the cases cited above in which a life sentence was imposed.  His commission of felony after felony warranted the life sentence under Louisiana law.  The imposition of that sentence upon Mead as a third offender was not so extreme that it violated the Eighth or Fourteenth Amendments.

For the reasons discussed above, the state courts' finding that Mead's sentence was not excessive, was not cruel and unusual, and was not otherwise unconstitutional, was not contrary to established Supreme Court case law, nor was it an unreasonable application of that precedent.  This claim is without merit.

X.      **Denial of the Motion for Mistrial (Claim No. 5)**

Mead argues that the state trial court erred in denying the defense's motion for mistrial when a prospective juror's responses to voir dire questions were prejudicial and denied him a fair and impartial trial.  The State argues that Mead failed to establish that he suffered any prejudice to entitle him to relief.

Mead raised this claim pro se on direct appeal to the Louisiana Fourth Circuit.  The Court denied relief finding that the trial court did not abuse its discretion in denying the motion since there was no showing of any prejudice and the juror in question was not impaneled.  This was the last reasoned decision on this issue.

The failure to grant a mistrial is a matter of state law and not of a constitutional dimension and is within the discretion of the state trial judge.  *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir. 1988).  The Constitution is only implicated when the denial of a motion for mistrial results

in a fundamental unfairness which fatally infected the trial or which is of such a quality that it necessarily prevents a fair trial. *See Lisenba v. People of the State of California*, 314 U.S. 219 (1914). To prevail on a due process claim that he was denied a fair trial due to juror prejudice, a petitioner must demonstrate the actual existence of an opinion in the minds of the jurors as will raise a presumption of partiality. *Murphy v. Florida*, 421 U.S. 794, 800 (1975).

Whether there has been a denial of due process in a criminal trial presents a mixed question of law and fact. *See Fairman v. Anderson*, 188 F.3d 635 (5th Cir. 1999); *see also Nevers v. Killinger*, 990 F. Supp. 844, 850-51 (E.D. Mich. 1997) (citing *Thompson v. Keohane*, 516 U.S. 99, 109-11 (1995)). Under the *Williams* standard of review, the Court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of *Lisenba*, the Supreme Court precedent.

The record reflects that, during voir dire, a prospective juror identified as "Juror Shellito" had the following exchange with the prosecutor regarding preformed opinions:[63]

| Juror Shellito: | I'm a doctor and I work a lot at Charity Hospital. My problem is not with the police, but I have a real problem with credibility of drug addicts. |
|---|---|
| Ms. Stassi: | Credibility with drug addicts? |
| Juror Shellito: | Correct, which may or may no apply to this case. |

In an effort to rehabilitate this prospective juror, the prosecutor then asked the following question:

| Ms. Stassi: | . . . Do you think you can listen to whoever takes that chair - - defense witnesses, State witnesses, police officers, not police officers, anybody and just judge them as a human, what they say and do I believe them? |
|---|---|

---

[63]St. Rec. Vol. 1 of 2, Trial Transcript, pp. 14-15, 5/5/99.

The juror responded as follows:

Juror Shellito:    I can try to be fair, but if it comes to a question of someone who has a drug abuse problem compared to say a policeman, I'm not going to give as much weight to the person with the drug abuse problem because of my own experience.

The Trial Court held a conference in Chambers, outside of the jury's presence, at which Mead's counsel moved for a mistrial based on Shellito's comments and the effects upon the other panel members.[64] Counsel was concerned that, since the case involved drugs and Mead had prior drug possession convictions, the jurors would presume that he was a drug addict and find him less credible. Counsel argued "if Alvin testifies to that, it's going to make it impossible for him to get a fair trial."[65]

Mead, however, did not testify at trial and therefore did not give the jury an opportunity to questions his credibility or make any presumption regarding his alleged drug use. Juror Shellito also was not empaneled as a juror to share any further opinions with the Court or the jury panel.

Mead has not presented any evidence to support his claim that the jury actually impaneled was unduly biased during voir dire or prior to or during deliberations as a result of Shellito's comments. He has failed to demonstrate an actual prejudice in the minds of the jurors which rendered his trial fundamentally unfair.

Mead's request for habeas relief arising from the voir dire exchange must fail. The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedence related to fundamentally fair trials.

_____

[64]*Id*. at 15.

[65]*Id*. at 16.

**XI.**    <u>Denial of the Motion to Recuse (Claim No. 6)</u>

Mead alleges that the Trial Court erred in denying his motion to recuse based on Judge Buras's appearance as a prosecutor, while employed by the Orleans Parish District Attorney's Office, in a charging conference which resulted in Mead's indictment on a separate heroin charge. The State argues that Mead is not entitled to relief because Mead's claim is conclusory and the state courts' resolution of the issue was a correct application of law.

Mead first raised this claim *pro se* on direct appeal to the Louisiana Fourth Circuit alleging that the denial of motion to recuse was an abuse of discretion. The Court denied relief finding that Mead failed to demonstrate a basis for recusal and was based on a conclusory inference which did not entitle him to relief.

To the extent Mead argues here that the Trial Court abused its discretion under state standards of judicial recusal, this alleged violation of state law does not merit federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A federal habeas corpus court will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir.1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)). Most questions concerning a judge's qualifications to hear a case are not constitutional ones. *Bunion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008).

However, "the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *Bunion*, 524 F.3d at 672; *see Samuel v. Warden, Avoyelles Corr. Ctr.*, 51 F. App'x 483 (5th Cir. 2002). Two presumptions weigh

in favor of finding that a judicial officer properly discharged their duties fairly and impartially: "(1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest." *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (citing *Bracy*, 520 U.S. at 909).

There are three situations in which presumptive bias has been found: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-maker has the dual role of investigating and adjudicating disputes and complaints. *Bigby*, 402 F.3d at 560. To secure habeas relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." *Id*. at 559 (citing *Liteky v. United States*, 510 U.S. 540, 552 (1994)). There must be an appearance of impropriety which rises to the level of a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, habeas relief is not cognizable. *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990).

In this case, Mead basis his claim on the Trial Court's alleged participation as an assistant district attorney in a charging conference on March 24, 1998, which led to his indictment for distribution of heroin, a charge unrelated to the one over which she was presiding as a judge.[66] In denying the motion to recuse, Judge Camille Buras stated, in relevant part, as follows:[67]

> I have no knowledge of the cocaine case when it was in the District Attorney's office. It would not have come across my desk as First Assistant because it was not an indictment. . . .
> Further, notwithstanding my initials on the charge conference sheet . . . . that pertains to the heroin case . . . [t]hat is not necessarily conclusive evidence that I was present during the presentation of the facts on Mr. Mead's case.

---

[66]St. Rec. Vol. 1of 2, Trial Transcript, p. 3, 5/5/99.

[67]*Id*. at 7-8.

It was generally my practice to only be present during the homicides or rape cases where there were issues that had to be resolved and my presence was needed. As a matter of general course, I was not present for the narcotics indictments.

Again, I have no knowledge of this cocaine case at all. I can definitely state that. I actually have no knowledge of Mr. Mead, the facts in this case - - I have not prejudged this case at all. . . .

Again, I have not prejudged this case. I have no knowledge of the cocaine case except what knowledge came to me subsequent to my being elected to this section of court.

After reviewing her reasons, and the trial record, the Louisiana Fourth Circuit found no abuse of discretion and no basis for the judge to have granted the motion to recuse. The Court reasoned that Mead's suggestion that she was "probably aware [of the other pending charges against the defendant]" was a conclusory inference and was insufficient to warrant further consideration of the motion to recuse.[68]

Mead has not shown any facts that would lead to the conclusion that Judge Buras acted with personal interest or bias in his case in violation of the Constitution. Mead has not demonstrated that Judge Buras issued any biased or prejudicial rulings during his trial or that she took any prejudicial actions against him in front of the jury.

There is insufficient evidence in the record that Judge Buras was impartial, biased, or prejudiced to support a claim under the constitutional standards set forth above. Accordingly, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedence. Mead is not entitled to federal habeas relief on this claim.

---

[68]St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-2686, p. 11, 9/27/00.

**XII.** <u>**Recommendation**</u>

For the foregoing reasons, it is **RECOMMENDED** that Alvin Mead's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 3rd day of September, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**